ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2006 JAN 12 PM 12: 52

CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| RICHARD L. JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 304-120 |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Richard L. Jones appeals the decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED** and that a final judgment be **ENTERED** in favor of the Commissioner.

## I. BACKGROUND

Plaintiff applied for disability benefits on October 2, 2001, alleging an onset date of September 1, 1987. Tr. 71. He alleged disability due to back problems and anxiety attacks.

Tr. 14. Plaintiff also contends that he is mentally retarded.[1] The Social Security Administration denied plaintiff's application and his request for reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). After a hearing at which plaintiff, represented by counsel, testified on his own behalf, the ALJ issued an unfavorable decision dated March 19, 2004. Tr. 14-25.

Applying the five-step sequential process required by Title 20, Code of Federal Regulations, Section 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity at any time relevant to this decision.

2. The claimant met his burden of proving the existence of an impairment that has more than a minimal impact on his ability to work.

3. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

4. The claimant has the residual functional capacity to perform work at all exertional levels with the following nonexertional limitations: he can never climb ladders, ropes or scaffolds; he cannot work around hazards including unprotected heights, unguarded dangerous machinery; he has moderate limitations on understanding detailed instructions and maintaining extended concentration resulting in claimant being best suited for simple work; and he must be allowed to take his prescription psychotropic medications without reported side effects.

5. The claimant can perform his past relevant work as an industrial cleaner and as a housekeeping cleaner.

Tr. 25.

When the Appeals Council denied plaintiff's request for review, the ALJ's decision

---

[1] Pl. Br. at 2.

became the final decision of the Commissioner. Plaintiff filed this civil action requesting a reversal of that adverse decision. Plaintiff argues that the ALJ erred in finding that he did not meet Listing 12.05, one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4, and the third step in the five-step evaluation under Section 404.920.

## II. THE STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d

at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

Plaintiff seeks a remand of the Commissioner's decision on the ground that the ALJ erred in finding that he did not meet Listing 12.05(c) of Title 20, Code of Federal Regulations, Part 404, Subpart P, Appendix 1.[2] According to Title 20, Code of Federal Regulations, Section 416.920(d), an impairment that "meets the duration requirement and is listed in Appendix 1 or is equal to a listed impairment(s)" will result in a finding of

---

[2]Plaintiff does not challenge the ALJ's ultimate findings regarding his residual functional capacity.

4

disability "without considering . . . age, education, and work experience." Listing 12.05 of Appendix 1 addresses mental retardation, defined therein as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Part 404, Subpart P, Appendix 1 at § 12.05. As evidence for his mental retardation, plaintiff cites seven IQ tests dating from March 1977, at which time plaintiff was seven years old, to March 2002, with scores ranging from 56 to 76.

"To be considered for disability benefits under section 12.05, a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22." Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997). A plaintiff satisfies Listing 12.05(c) when he "presents a valid I.Q. score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities."[3] Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992). The Eleventh Circuit, however, has recognized "that a valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." Id. An ALJ must "take into account the intelligence test and the medical report" in evaluating a mental retardation claim. Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986).

---

[3]In this case, plaintiff asserts and the Commissioner does not contest that plaintiff's anxiety attacks constitute the additional severe impairment.

5

In this case, the ALJ found that, while plaintiff's condition was a severe impairment sufficient to satisfy Step Two of the Section 416.920 five-step process, the impairment did not satisfy Listing 12.05 at Step Three. In so finding, the ALJ noted that, "although [plaintiff] has scored in the mid-60s on I.Q. tests, he also takes these tests in a hyperactive, haphazard way." Tr. 21. The ALJ further observed that plaintiff's "prior work history at the semi-skilled level . . . shows the various psychologists who have estimated borderline intellectual functioning to be right, as does [plaintiff's] preaching (as a lay minister) and Gospel singing. I do not find [plaintiff's] I.Q. scores to be consistent with his developmental history and degree of functioning." Tr. 21.

In support of his findings, the ALJ cited Dr. John J. Anthony, a consulting psychologist who administered an IQ test to plaintiff and observed during the test that plaintiff "tended to be hyperactive and hyperdistractible" and "exhibited spontaneous verbalizations about computers, going to college, and playing football."[4] Tr. 210. Another psychologist who administered an IQ test to plaintiff observed that plaintiff

> approached testing in a haphazard style, unintentionally covering up testing material with his arms while working. He became frustrated on performance and visual-motor tasks requesting to quit, acting "put out," throwing his pencil down, and slamming his fist on the desk when making obvious errors. He frequently expressed an interest in seeing some "women" during testing. . . . Midway through testing he stated that men make him bored. He said that he would rather talk to women while taking tests "because I can concentrate more better."

Tr. 239.

---

[4] Dr. Anthony concluded that plaintiff was "in the borderline range of intellectual ability." Tr. 210.

6

The ALJ also relied on the findings of Dr. Marvin L. Long, another examining psychologist. After administering an IQ test to plaintiff, Dr. Long opined that plaintiff is "not as limited as psychometrics would suggest" and that, based on plaintiff's history and lifestyle, his "adaptive capability is much higher than psychometrics." Tr. 273. Overall, Dr. Long found "[n]o indication of measurable thought disturbance or true mental retardation" and recommended that plaintiff "continue working as long as possible . . . ." Tr. 275.

While plaintiff's low IQ scores give rise to a presumption of mental retardation, such a presumption may be rebutted when his past work activities are inconsistent with a diagnosis of retardation. E.g., Hodges v. Barnhart, 276 F.3d 1265, 1269 (11 th Cir. 2001). In this case, the Court finds no evidence in the record that any examining psychologist has ever diagnosed plaintiff as mentally retarded.[5] Most diagnoses put him in the "borderline intellectual functioning" category and discount his low IQ test results based on his lack of concentration during testing. E.g., Tr. 275, 239. The record also indicates that plaintiff has performed work at a semi-skilled level throughout his adult life, and that he was working at a car wash as recently as his consultation with Dr. Long in February 2001.

The Court finds that the ALJ sufficiently rebutted the presumption of mental retardation in this case by citing the opinions of medical examiners, plaintiff's behavior during IQ tests, and plaintiff's adult work history. Thus, the ALJ's finding at Step Three was supported by substantial evidence and should be affirmed.

---

[5] All three of the state agency psychologists who reviewed plaintiff's records concluded that he did not meet Listing 12.05. Tr. 278-92, 310-22, 548-60.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 12th day of January, 2006, at Augusta, Georgia.

_W. Leon Barfield_
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE